UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRANS-ATLANTIC MOTORS, INC., <br><br>    Plaintiff, <br><br> v. <br><br> MERCEDES-BENZ USA, LLC, <br><br>    Defendant. | Civil Action No.: 1:09-cv-10213 |

**AFFIDAVIT OF KATHRYN K. CONDE
IN SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION TO ENFORCE
SETTLEMENT AGREEMENT**

I, Kathryn K. Conde, hereby depose and state as follows:

1. I am a partner in the law firm of Nutter, McClennen & Fish LLP, a member in good standing of the Bar of the Commonwealth of Massachusetts, and counsel for Plaintiff, Trans-Atlantic Motors, Inc. ("Trans-Atlantic"), in the above-captioned action. I make this affidavit based on my personal knowledge.

2. In the negotiations leading to the execution of the Settlement Agreement and Release (the "Settlement Agreement") in this matter, I conferred with two representatives of MBUSA by telephone, together with MBUSA's outside counsel, John Sullivan. At the time, Trans-Atlantic had learned that an existing Mercedes Benz franchisee was interested in purchasing its Mercedes Benz franchise on Cape Cod. Trans-Atlantic and MBUSA were discussing generally the circumstances under which the transfer of the franchise might settle the underlying litigation. During this particular telephone call, the parties discussed the time period

for any review of the transaction by MBUSA.  I had conveyed previously that Trans-Atlantic was seeking to either get the transaction approved swiftly or to otherwise proceed with the litigation and that my client wished to avoid repeating the experience it had with its prior effort to transfer the Mercedes Benz franchise which had extended the litigation and failed to resolve it.

3. In discussing the time period for MBUSA's review during this call, I inquired about whether thirty days was a realistic time frame for the company to complete the review and was told by a MBUSA representative that it was achievable because MBUSA already had discussed the transfer with the proposed buyer.  The Settlement Agreement executed thereafter by MBUSA and Trans-Atlantic provided for thirty days from the receipt of the purchase agreement for MBUSA to approve or reject the transaction in writing.  A true and correct copy of the Settlement Agreement is attached here to as Exhibit A.  Trans-Atlantic and MBUSA agreed to two extensions for Trans-Atlantic and the buyer to execute a purchase agreement.  A true and correct copy of those amendments to the Settlement Agreement are attached hereto as Exhibits B and C.  The Second Amendment to Settlement Agreement and Mutual Release (the "Second Amendment") provided that a purchase agreement would have to be executed by July 27, 2010.  Second Amendment, Ex. C, ¶ 1.

4. On July 27, 2010, Trans-Atlantic executed an Asset Purchase Agreement (the "Buy-Sell") with AMR Auto Holdings-MH, LLC and Automile Holdings, LLC (together, the "Buyer").  A copy of the executed Buy-Sell was sent by e-mail to MBUSA's counsel and another copy by overnight mail.  True and correct copies the Buy-Sell and the transmittal e-mail are attached hereto as Exhibit D.  The purchase price has been redacted, but an unredacted copy of the Buy-Sell will be made available to the Court upon request.

5. MBUSA acknowledged receipt of the Settlement Agreement by letter and confirmed that it would review the transaction within thirty days. A true and accurate copy of the letter from MBUSA's Regional Franchise Manager, dated July 28, 2010, is attached hereto as Exhibit E.

6. The deadline for MBUSA to provide its written response was August 26, 2010. When that date passed without any communication from MBUSA, I called MBUSA's outside counsel and was told in response to my inquiry that MBUSA needed some more time.

7. On September 8, 2010, when MBUSA still had not provided a written response on the Buy-Sell, I again contacted MBUSA's counsel. This time I was told that a response was expected shortly, perhaps in the next week.

8. When MBUSA failed to provide any written response over the course of the next several weeks, I contacted MBUSA counsel on October 12, 2010. Counsel for MBUSA did not have additional information to report and committed to get back to me. Following the call, I forwarded a proposed amendment to the Settlement Agreement, providing for a return date of October 15, 2010 for MBUSA's response. A true and correct copy of my e-mail of October 13, 2010 regarding this amendment is attached hereto as Exhibit F.

9. I was informed in a follow-up call that MBUSA was reviewing some information that it said it had recently received from the Buyer. I reminded counsel for MBUSA that the Buy-Sell provided for a closing by October 31, 2010 and informed him that Trans-Atlantic and the Buyer had agreed upon an October 26, 2010 closing date and had set a date for the inventory of the parts, accessories, tools and other assets for October 23, 2010. I asked MBUSA counsel to obtain a date certain by which MBUSA would review this additional information and finally provide its written approval.

10. In another follow-up telephone call with MBUSA's counsel, I was informed that he was not able to get a date for a response but that the company wanted the transaction to close by the October 26, 2010 date set by the parties. I sent a follow-up e-mail on October 14, 2010 attaching a another proposed amendment to the Settlement Agreement providing that MBUSA would respond by October 18th. My e-mail again reminded MBUSA of the October 31, 2010 latest closing date in the Buy-Sell that permitted Buyers to terminate the agreement. A true and correct copy of that e-mail is attached hereto as Exhibit G. There was no response to that e-mail.

11. On October 18, 2010, I sent another e-mail to MBUSA's counsel stating that MBUSA's performance was overdue and that "whatever materials were recently sent by the buyers were materials that should have been requested and reviewed long ago." A true and correct copy of that e-mail is attached hereto as Exhibit H. Again, there was no response from the company.

12. On October 21, 2010, not having heard anything from MBUSA, I wrote to MBUSA stating that they were in breach of our Settlement Agreement and that we would be required to petition the Court for relief. I informed MBUSA that Trans-Atlantic had executed agreements to sell its remaining two franchises (BMW and Volvo) which were dependent upon the Mercedes Benz transaction being consummated in advance and that MBUSA's failure to meet its contractual obligations would render it liable for the failure of all three of these transactions. A true and correct copy of my letter of October 21, 2010 is attached hereto as Exhibit I.

13. Trans-Atlantic's agreements for the sale of its BMW and Volvo franchises, as amended, provide for their closing weeks following the anticipated closing of the Mercedes Benz transaction. BMW has approved the transfer subject to the buyers operating the business at

Trans-Atlantic's Hyannis facility. These agreements require the closing to occur, at the latest, by the end of December, 2010. It is planned that the buyers will lease the Hyannis facility (now housing all three auto lines), but they can do so only after the Mercedes Benz franchise has been sold and relocated. Attached hereto as Exhibits J and K are true and correct copies of the Asset Purchase Agreements for the BMW and Volvo franchises, together with their amendments. Provisions relating to the identity of the buyers, the purchase price and other material financial terms have been redacted. Unredacted copies of these agreements will be made available upon request of the Court. The total value of these sales and the sale of the Mercedes Benz franchise is in the millions of dollars.

14. Not having received any response to my letter of October 21, 2010, I called MBUSA counsel on October 26, 2010. Counsel did not have further information until later that day when he telephoned to inform me the true reason for MBUSA's dilatory conduct. He reported that the transaction was being reviewed a second time in Germany by MBUSA's parent company, Daimler AG ("Daimler"). He explained that the review was being performed pursuant to policies or procedures that had been implemented by Daimler in September 2010, as a result of a voluntary consent judgment that Daimler had entered with the Department of Justice to resolve a Federal Corrupt Practices Act investigation by the Securities and Exchange Commission. The procedure for review by Daimler was not a procedure in place prior to September 2010.

15. I learned during that call that Daimler had made a request for information from the Buyer on or about September 16, 2010 and that the information requested in September had been provided by the Buyer in October. I was also informed that it was unknown whether

Daimler had yet commenced its own substantive review of the transaction, how long such review would take and whether or not Daimler would itself "approve" the transfer.

16. On October 28, 2010, we demanded copies of documents related to these newly-established procedures and the voluntary settlement, but have received no response from MBUSA to the demand.

17. A true and correct copy of the amendment to the Buy-Sell for the Mercedes Benz franchise, extending the closing date until November 12, 2010, is attached hereto as Exhibit L.

***SIGNED UNDER THE PENALTIES OF PERJURY THIS 3rd DAY OF NOVEMBER 2010.***

/s/ Kathryn K. Conde
Kathryn K. Conde

## **CERTIFICATE OF SERVICE**

      I certify that this document (filed through the ECF system) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 3, 2010.

                                       /s/ Kathryn K. Conde
                                        Kathryn K. Conde

1963378.1