# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement" or the "Settlement Agreement") is entered into as of this 1st day of July, 2010 by and between Mercedes-Benz USA, LLC ("MBUSA"), a Delaware limited liability company with its principal office and place of business at One Mercedes Drive, Montvale, New Jersey 07645, and Trans-Atlantic Motors, Inc. ("Trans-Atlantic"), a Massachusetts corporation with a principal office and place of business at 25 Falmouth Road, Hyannis, Massachusetts ( MBUSA and Trans-Atlantic, together, the "Parties").

WHEREAS, MBUSA is engaged in the business of selling and distributing Mercedes-Benz parts and accessories; and

WHEREAS, Trans-Atlantic is engaged in the business of selling motor vehicles, parts and accessories at retail and servicing motor vehicles; and

WHEREAS, MBUSA and Trans-Atlantic are parties to a Mercedes-Benz Passenger Car Dealer Agreement (the "Passenger Car Agreement") and a Mercedes-Benz Light Truck Dealer Agreement (the "Light Truck Agreement" and, collectively with the Passenger Car Agreement, the "Dealer Agreement"), pursuant to which Trans-Atlantic has been granted the non-exclusive right to purchase and sell at retail Mercedes-Benz motor vehicles and to perform authorized Mercedes-Benz service, all as set forth in the Dealer Agreement; and

WHEREAS, by letter dated October 21, 2008, MBUSA notified Trans-Atlantic that, effective January 2, 2009, MBUSA intended to terminate the Dealer Agreement for the reason set forth in the letter (the "Notice of Termination"); and

WHEREAS, Trans-Atlantic filed an action challenging the Notice of Termination in the Superior Court for the Commonwealth of Massachusetts entitled Trans-Atlantic Motors,

Inc. v. Mercedes-Benz USA, LLC, C.A. 2009-0040, which MBUSA removed to the United

States District Court for the District of Massachusetts (the "Court"), where it is currently pending

as Civil Action No. 1:09-CV-10213 (the "Action"); and

WHEREAS, Trans-Atlantic filed a Complaint and Amended Complaint in the

Action, asserting various claims including alleged violations of Chapter 93B of the

Massachusetts General Laws (the "Act"), and demanding various forms of relief, including

attorneys' fees and litigation expenses; and

WHEREAS, MBUSA filed answers to the Complaint and to the Amended

Complaint denying the material allegations of each and seeking judgment in its favor; and

WHEREAS, Trans-Atlantic and MBUSA entered into a Stipulation dated March

6, 2009, which was "So Ordered" by the Court on June 6, 2009, providing that Trans-Atlantic

and MBUSA would continue to do business with one another pursuant to the terms and

conditions of the Dealer Agreement during the pendency of the Action, all as set forth in the

Stipulation; and

WHEREAS, David Rosenberg contacted Trans-Atlantic and expressed an interest

in a purchase by Prime Motor Group LLP or another affiliated entity ("Prime Motor") of Trans-

Atlantic's Mercedes-Benz assets and franchise (the "Buy-Sell"), and Trans-Atlantic has asked

MBUSA whether it would be willing to consider such a Buy-Sell and also to simultaneously

settle the Action; and

WHEREAS, it has been and remains MBUSA's position that Trans-Atlantic does

not have the right to transfer its Mercedes-Benz dealership assets and franchise "free and clear"

of the Notice of Termination; and

WHEREAS, it has been and remains Trans-Atlantic's position that MBUSA is required to review proposed transfers of its franchises despite the Notice of Termination; and

WHEREAS, MBUSA is willing to review a Buy-Sell between Trans-Atlantic and Prime Motor, as a potential means of settling the Action, but only pursuant to the terms and conditions of this Agreement; and

WHEREAS, MBUSA and Trans-Atlantic disagree as to whether MBUSA has a statutory or contractual obligation to review a proposed transfer of Trans-Atlantic's Mercedes-Benz franchise and both Parties wish to preserve their respective positions on that issue; and

WHEREAS, MBUSA and Trans-Atlantic have previously entered into a "Confidentiality Agreement Regarding Confidential Settlement Negotiations," fully executed as of April 13, 2010, concerning the potential Buy-Sell; and

WHEREAS, the Parties are now desirous of conditionally settling the Action pursuant to the terms and conditions hereof; and

WHEREAS, Trans-Atlantic and MBUSA have each concluded that the settlement provided for herein is fair, reasonable and adequate, and both are represented by counsel.

NOW, THEREFORE, in consideration of the mutual promises made herein, MBUSA and Trans-Atlantic agree as follows:

1.      **MBUSA Review of Buy-Sell.**  In the event that Trans-Atlantic enters into the Buy-Sell on or before July 14, 2010, MBUSA (a) will review the Buy-Sell; (b) will communicate its decision to Trans-Atlantic on whether or not it approves the Buy-Sell in writing within 30 days of receiving a copy of the Buy-Sell from Trans-Atlantic; and (c) will not unreasonably withhold consent to the Buy-Sell.  MBUSA will not withhold consent on the ground that the Buy-Sell is not subject to the pending Notice of Termination.

2.      **Stay of Action.** Upon execution of this Agreement, the Parties agree to jointly move the Court to stay all further proceedings in the Action until the filing of a Stipulation of Dismissal in accordance with Paragraph 3 hereof or until the Parties jointly report an impasse to the Court. In the event that the stay is lifted due to an impasse, the Parties agree that they will jointly petition the Court to issue an amended Scheduling Order providing for two months for the completion of fact discovery with expert disclosures and expert discovery and schedules for dispositive motions to follow the close of fact discovery in accordance with the present Scheduling Order.

3.      **Consequences of Approval.** In the event that MBUSA approves the Buy-Sell, Trans-Atlantic shall endeavor to effect the closing of the Buy-Sell (the "Closing") within 45 days of the date that Trans-Atlantic receives MBUSA's written notice of approval (excluding the date that notice of approval is received), or by August 30, 2010, whichever date is later. If the Closing does not take place within that time period, MBUSA may, at its option, withdraw its approval of the Buy-Sell. In the event the Closing takes place, effective upon the date of the Closing, the following will occur: (a) all claims and demands for relief asserted by Trans-Atlantic in the Action, including all claims for attorney's fees and expenses, shall be deemed settled; (b) the Dealer Agreement shall terminate effective upon the date of the Closing (the "Termination Date") without further notice of any kind; (c) the mutual release set forth in Paragraph 5 hereof shall become effective; (d) MBUSA shall effect and Trans-Atlantic shall cause the Dealer Operator under the Dealer Agreement, Algimantas Krisciunas, to effect a mutual release on the same terms and conditions set out in Paragraphs 5 through 7 of this Agreement; and (e) Trans-Atlantic and MBUSA shall file a dismissal of the Action, with

prejudice and without costs to either side, in substantially the form annexed hereto as Exhibit A, within seven business days after the Closing.

   4.   **Trademarks.** Upon termination of the Dealer Agreement, Trans-Atlantic will forthwith remove and cease the use of or display of any and all Mercedes-Benz trademarks and shall not hold itself out as an authorized dealer in Mercedes-Benz products. Notwithstanding anything to the contrary contained herein or in the Dealer Agreement, in lieu of immediate removal of outdoor signage containing any Mercedes-Benz trademark, Trans-Atlantic may cover such signage until its removal or replacement can be effected.

   5.   **Mutual Release.** Effective upon the Termination Date, except as otherwise provided pursuant to Paragraphs 6 through 7 of this Agreement, Trans-Atlantic, on the one hand, and MBUSA, on the other, do hereby (i) relinquish any and all rights the Parties hereto may have had under the Dealer Agreement and (ii) release, acquit and forever discharge each other, and their past and present respective officers, directors, employees and agents (whether acting in their personal or official capacities), shareholders, predecessors, successors and assigns, and any present or former parent, subsidiary and affiliated companies, of and from any and all obligations, claims, demands, suits and, actions of every nature or kind (whether for damages, equitable or mixed relief), known or unknown, suspected or unsuspected that each now has or may have against the other in connection with, in consequence of, in any way involving, relating to or arising out of the Dealer Agreement or to the past or present course of business dealings between the Parties, including, but not limited to, any claims under the Act, the federal Automobile Dealer's Day in Court Act, the statutes and common law of the State of New Jersey or the Commonwealth of Massachusetts and the antitrust laws, arising from the beginning of the world through and including the Termination Date. The Parties expressly acknowledge that they

may hereafter discover facts different from, or in addition to, those which they now know or believe to be true and agree that this Agreement shall be and remain effective in all respects notwithstanding such different or additional facts or the discovery thereof.

6.    **Exceptions to Release.** Notwithstanding anything herein to the contrary, the Parties expressly agree that the mutual releases set forth herein shall not include or pertain to (a) purchases made by Trans-Atlantic from MBUSA for goods or services, or any monies due from Trans-Atlantic to MBUSA for such purchases, or other charges posted, or to be posted, or any rebates, refunds, bonuses, credits, holdbacks or any other monies due from MBUSA to Trans-Atlantic's account in the ordinary course of business;(b) the Parties' rights and obligations with respect to indemnification and defense of third-party claims as provided in Section XII of the Dealer Agreement, as well as any existing common law rights of indemnification for product liability claims; (c) MBUSA's indemnification and defense obligation to Trans-Atlantic in accordance with the Dealer Agreement and the terms of the February 27, 2009 letter from MBUSA to Trans-Atlantic with respect to the matter of *Gordon Siegel and Vincent Breglia v. Mercedes-Benz USA, Inc. and Trans-Atlantic Motors, Inc.*, C.A. No. BACV2009-00082, presently pending in the Massachusetts Superior Court, Barnstable or any other pending matter for which MBUSA has undertaken to defend and/or indemnify Trans-Atlantic; and (d) the pending, ordinary-course-of-business transactions specified in Paragraph 7 below.

7.    **Pending Ordinary-Course-of-Business Transactions.** The foregoing notwithstanding, and consistent with the Parties' practice under the Dealer Agreement, any credits due to Trans-Atlantic for warranty claims submitted but not processed as of the Termination Date ("Warranty Claims in Process") and/or for warranty repairs performed by Trans-Atlantic for which no claim has yet been submitted by Trans-Atlantic to MBUSA as of the

Termination Date (the "Remaining Warranty Claims"), shall be posted to Trans-Atlantic's parts account, in accordance with the terms and conditions of MBUSA's warranty policies and procedures and the following terms and conditions:

(i)     All Warranty Claims in Process shall be processed in the ordinary course of business and Trans-Atlantic shall respond in a timely manner to any edits or other inquiries concerning such claims in accordance with the terms and conditions of MBUSA's warranty policies and procedures.  Failure by Trans-Atlantic to provide any requested information within the time period provided for in the warranty policies and procedures will result in the relevant claims being denied; and

(ii)     Any and all Remaining Warranty Claims must be submitted by Trans-Atlantic to MBUSA within 30 days after the Termination Date and, in order to be eligible for reimbursement, must otherwise be timely submitted under the terms and conditions of MBUSA's warranty policies and procedures.  MBUSA will not reimburse Trans-Atlantic for any such claims submitted more than 30 days after the Termination Date.

Within ninety (90) days after the Termination Date, MBUSA will (i) notify Trans-Atlantic of the status of Trans-Atlantic's parts account, giving effect to such credits and debits as MBUSA shall process consistent with the Parties' previous practice, including, but not limited to, incentive claims or charge-backs, parts returns or parts charges, and holdbacks; and (ii) either notify Trans-Atlantic of the final amount due MBUSA on such account, in which case such amount must be paid by Trans-Atlantic to MBUSA within thirty (30) days of such notice, or notify Trans-Atlantic of the final amount Trans-Atlantic is entitled to, in which case such amount will be paid by MBUSA to Trans-Atlantic within thirty (30) days of such notice.

8. **Post-Termination Obligations.** For the avoidance of doubt, Trans-Atlantic hereby acknowledges and agrees that following termination upon the Closing of the Buy-Sell pursuant to this Agreement, MBUSA shall have no repurchase obligations as provided under Section XI. H. of the Dealer Agreement and no repurchase obligations under M.G.L. c. 93B, Section 5(k), and no obligation under any statute, agreement or the common-law to pay Trans-Atlantic any amounts relating to its goodwill or other value of its dealership or Mercedes-Benz franchise.

9. **Confidentiality.** The Parties agree that this Agreement is confidential. It is therefore expressly understood and agreed by the Parties that they shall not disclose, cause to be disclosed, reveal, discuss, publish or in any way communicate any of the terms of this Agreement or the substance of any settlement negotiations between the Parties to any person, organization or other entity other than Prime Motor. In the event that the Action is discontinued pursuant to this Agreement, the Parties, if asked about the status of the Action, will only state in words or substance: "The matter has been resolved." As an exception to this provision, it is understood that the Parties may disclose information to their counsel, tax preparer and auditors; provided, however, that any and all such individuals or entities are alerted to and agree to be bound by this restriction. In addition, either party may file this Agreement with the Court in order to obtain enforcement thereof. Should any of the Parties be required by law, legal process or subpoena to provide information related to the Action or this Settlement Agreement, any such party shall, in advance of providing any response pursuant to such law, legal process or subpoena, and within five (5) days of receipt of notice of such law, legal process or subpoena, provide written notice by overnight and certified mail to the other party hereto of such law, legal process

or subpoena, so that the other party may seek to assert its or his rights and interests in connection therewith.

**10.    MBUSA Confidential Information.** Trans-Atlantic shall strictly maintain the confidentiality of all non-public information and documents provided to Trans-Atlantic by or on behalf of MBUSA or to which it has had access through MBUSA, including without limitation all information and documents in any form or format regarding product development, new products, production and delivery schedules, pricing, marketing plans, methods of accessing internal information (electronically or otherwise), trade secrets, and other proprietary matters. Trans-Atlantic shall not disclose any such information or documents to any person, other than Trans-Atlantic employees, shareholders, its tax accountants, auditors or lawyers, or to Prime Motor, including to any competitors or customers of MBUSA. Any breach of this paragraph shall be deemed to cause irreparable harm to MBUSA, and, in addition to damages, MBUSA shall be entitled to temporary, preliminary and permanent injunctive relief enjoining and restraining any further breach.

**11.    Counterparts.** This Settlement Agreement may be executed in counterparts and such counterparts individually and collectively will be deemed part of the same instrument. Facsimile signatures will have the same legal effect as original signatures.

**12.    Voluntary Agreement.** The Parties declare that they understand the terms of this Settlement Agreement, that they have executed it voluntarily, that they are under no requirement to sign this Settlement Agreement, that they have not been coerced, that they are not under any economic or other duress, that all of their agreements are supported by good and adequate consideration, and that they have received and are relying upon the advice of counsel.

13.    **No Contra Preferendum.** This Settlement Agreement has been negotiated by the Parties and shall not be construed in favor of, or against, any signatory.

14.    **Integrated Agreement.** This Settlement Agreement, which represents a compromise of disputed claims, contains the final and entire understanding of the Parties with respect to the subject matter described herein and supersedes all prior negotiations, representations or agreements between the Parties. There are no representations, promises, agreements, warranties, covenants, or undertakings between the Parties other than those expressly contained herein.

15.    **No Oral Amendments.** This Settlement Agreement may not be amended, except in writing and with the written consent of the Parties.

16.    **Binding Effect.** This Settlement Agreement is binding upon the Parties and their affiliates, successors and assigns.

17.    **Representation of Authority.**  Each person or entity executing this Agreement warrants and represents that he or she is duly authorized to do so, all necessary action having been taken to confer such authority.

18.    **Notices.** All notices required or permitted hereunder shall be made in writing, addressed to the receiving party's address set forth below or to such other address as a party may designate by notice in writing and either (i) delivered by hand, (ii) sent by recognized overnight courier; or (iii) sent by registered mail, return receipt requested, postage prepaid and shall be effective upon the date of receipt:

|  |  |
|---|---|
| if to Trans-Atlantic: | Algimantas Krisciunas<br>President<br>Trans-Atlantic Motors, Inc.<br>25 Falmouth Road<br>Hyannis, MA 02601 |

| | |
|---|---|
| with a copy to : | Kathryn K. Conde, Esq.<br>Nutter, McClennen & Fish LLP<br>Seaport West<br>155 Seaport Blvd.<br>Boston, MA 02210 |
| if to MBUSA: | Joseph Kurp<br>General Manager -- Northeast Region<br>Mercedes-Benz USA, LLC<br>Morris Corporate Center 3<br>400 Interpace Pkwy.<br>Parsippany, NJ 07054 |
| with a copy to | Mark Kelly, Esq.<br>Mercedes-Benz USA, LLC<br>One Mercedes Drive<br>Montvale, NJ 07645 |

19.     **Governing Law and Choice of Forum.** This Settlement Agreement shall

be governed by and construed in accordance with the laws of the Commonwealth of

Massachusetts, without regard to its conflict of laws provisions.  Any and all jurisdiction for

claims arising under or relating to this Settlement Agreement shall reside exclusively in the state

and federal courts of the Commonwealth of Massachusetts, and the Parties expressly consent to

the jurisdiction of those courts and waive any and all objections to jurisdiction or venue.

20.     **Sealed Instrument.** It is the express intention of the Parties that this

Settlement Agreement shall operate as a sealed instrument.

21.     **Severability.** Whenever possible, each provision of this Settlement

Agreement shall be interpreted in such a manner as to be effective and valid under applicable law,

but if any provision shall be held to be prohibited or invalid, such provision shall be ineffective

only to the extent such prohibition or invalidly, without invalidating the remainder of such

provision or other remaining provisions of this Settlement Agreement.


Dated this ____6____ day of ___July___, 2010

MERCEDES-BENZ USA, LLC

By: _____

Name    CHARLES L SHADY
Title    GENERAL COUNSEL
Duly Auth MERCEDES-BENZ USA, LLC

By _____
Mark H. Kelly by Paula S. Staropoli
Counsel
Duly Authorized

Dated this ____/____ day of ___July___, 2010

TRANS-ATLANTIC MOTORS, INC.

By: _____
Algimantas Krisciunas
President/ Treasurer
Duly Authorized


*This Space Intentionally Left Blank*


\\NY - 003540/000095 - 2207838 v1                    12

EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

TRANS-ATLANTIC MOTORS, INC.,

                           Plaintiff,

      v.

MERCEDES-BENZ USA, LLC,

                         Defendant.

**Civil Action No.: 1:09-cv-10213**

### STIPULATION OF DISMISSAL WITH PREJUDICE

     Plaintiff, Trans-Atlantic Motors, Inc., and Defendant, Mercedes-Benz USA, LLC., stipulate that this civil action and all claims asserted herein shall be, and hereby is, dismissed with prejudice and without attorneys fees or costs. All rights to appeal from dismissal of the underlying claims are hereby waived.

| | |
|---|---|
| TRANS-ATLANTIC MOTORS, INC.,<br>By its attorneys, | MERCEDES BENZ USA, LLC,<br>By its attorneys, |
| _____<br>Augustus F. Wagner, Jr. (BBO# 511780)<br>Kathryn K. Conde (BBO# 634647)<br>Dawn M. Curry (BBO# 647188)<br>Nutter, McClennen & Fish, LLP<br>Seaport West<br>155 Seaport Blvd.<br>Boston, MA 02210<br>(617) 439-2000 | _____<br>John J. Sullivan<br>875 Third Avenue<br>New York, New York 10022<br>(212) 918-3000<br><br>Mark P. Szpak (BBO # 546261)<br>ROPES & GRAY LLP<br>One International Place<br>Boston, Massachusetts 02110 |
| Dated: _____ | |